IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JOYCE AND RICHARD YARISH,<br>    and others similarly situated<br><br>        Plaintiffs,<br><br>v.<br><br>DOWNEY FINANCIAL CORPORATION<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil No. 3:08-cv-380<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' REPLY IN RESPONSE TO DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' SECOND MOTION TO AMEND THE COMPLAINT**

COME NOW the Plaintiffs, by counsel, and as for their Reply in Response to Defendant's Memorandum in Opposition to their Second Motion to Amend the Complaint, they state as follows:

The Defendant's substantive opposition to Plaintiffs' Motion to Amend is predicated on an erroneous foundation – the Defendant cites *Int'l Bancorp* for the proposition that Virginia courts generally apply the law of the corporation's place of domicile for purposes of determining liability via piercing the corporate veil.  Mem. Opp. at 5, fn. 1  The Defendant then argues that a corporation must be domiciled in the state in which it is incorporated, citing *Michie's Jurisprudence*.   Both logical steps are incorrect.

*Int'l Bancorp* addresses the appropriate choice of law when determining whether to pierce the corporate veil – but only for purposes of determining whether a court's exercise of personal jurisdiction over the alleged alter ego of a corporation is sufficient to satisfy personal jurisdiction over its shareholder.  It goes no farther than that.  Further, the single line from *Michie's Jurisprudence* quoted by the Defendant without further support is of similar

irrelevance, given that it is referring to how a federal court makes a determination of the <u>citizenship</u> of a corporation.

The issue that this Court will ultimately consider in this case – still premature at this juncture -- is (1) which standard or set of factors to consider when a Plaintiff seeks to pierce the corporate veil against the parent company shareholder due to the actions of its alter ego subsidiary, and (2) when the claim against the subsidiary is predicated upon federal question jurisdiction. There are some federal statutes and regulations which prescribe within themselves the standard to be employed by the courts when faced with this analysis (e.g. the Depository Institution Management Interlocks Act, 12 U.S.C. §3201-3207 (interlocking management standard); I.R.C. §1239(a)(2),(3) (related persons standard); the Fair Labor Standards Act §3(r), 29 U.S.C. §203 (single-enterprise standard); ERISA § 4001(b), 29 U.S.C. §1301(b)(1) (common control standard). In other instances, the statute specifically prescribes state law as the appropriate standard (e.g. the Federal Tort Claims Act, 28 U.S.C. §1346(b), 2672, 2674). But where the statute is silent, federal common law as to the appropriate standard for piercing the corporate veil must prevail. *See, generally, Piercing the Corporate Law Veil: The Alter Ego Doctrine Under Federal Common Law*, 95 Harv. L. Rev. 853 (1982).

The Supreme Court has already considered this issue in the very context of a bank holding company that sought to avoid exposure arising from its bank subsidiary. In *Anderson v. Abbott*, the bank holding company sought to invoke the law of the state in which it was incorporated – coincidentally, as in the present case, Delaware – to insulate itself from liability in receivership for an assessment on the bank's shares. The Court rejected this approach and held that the determination should instead be made using principles of federal common law:

> "It is of course true that Delaware created this corporation. But the question of liability for these assessments is a <u>federal question</u>. The policy underlying a federal statute may not be defeated by such an assertion of state power. Northern Securities Co. v. United States, 193 U.S. 197, 349, 24 S.Ct. 436, 461, 48 L.Ed. 679; Seabury v. Green, supra. The spectre of unlimited liability for stockholders has been raised. But there is no cause for alarm. Barring conflicting federal incorporation statutes, Delaware may choose such rules of limitation on

the liability of stockholders of her corporations as she desires. And those laws are enforceable in federal courts under the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. But no State may endow its corporate creatures with the power to place themselves above the Congress of the United States and defeat the federal policy concerning national banks which Congress has announced. We are concerned here with that problem and with that problem alone."

*Anderson v. Abbott*, 321 U.S. 349, 365 (1944) (emphasis added)

More recently, the Third Circuit dealt with the same issue in the context of a federal question claim arising under the Worker Adjustment and Retraining (WARN) Act, 29 U.S.C. §2101, *et seq*. *Pearson v. Component Technology Corporation*, 247 F.3d 471 (3d. Cir 2001).

The WARN Act falls into the category of statutes referenced above which have an associated regulation (in this case, published by the Department of Labor) that prescribes the standard to be applied when determining whether to assign liability to a parent corporation. The complication that the Third Circuit considered was that the Department had itself issued a later regulation clarifying that jurisprudence under the WARN Act should not deviate from "existing law" with regard to liability for affiliated corporations. *Id.* at 477.  The Third Circuit ultimately held that it would employ the original set of factors articulated by the Department of Labor – the "single enterprise" or "intergrated employer test".

This decision is relevant to the Court's present determination because in interpreting these tests, the Third Circuit articulates the standard for piercing the corporate veil under Third Circuit federal common law and then compares the Department of Labor factors to it to analyze the similarities and distinctions.  The Court held that the federal common law test requires that the court look to the following factors:  gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of the debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, non-functioning of officers and directors, absence of corporate records and whether the corporation is merely a façade for the operations of the dominant stockholder. *Id.* at 484, 485.   It also held that "…. it has long been

acknowledged that parents may be 'directly' liable for their subsidaries actions when the alleged wrong can seemingly be traced to the parent <u>through the conduit of its own personnel and management</u>, and the parent has interfered with the subsidiary's operations in a way that surpasses the control exercised by a parent as an incident of ownership." *Id.* at 487.  (emphasis added).

Within Fourth Circuit case law, while no federal common law factors have explicitly articulated as such, it is noteworthy that the oft-cited *DeWitt Truck Brokers* factors are themselves derived from state law, specifically South Carolina law, as was appropriate in that diversity case.  *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 684-87 (4th Cir. 1976).  Contrary to Downey's arguments, in *DeWitt*, the Fourth Circuit specifically <u>rejected</u> fraud as a prerequisite to piercing the corporate veil and instead delineated the following factors which the Court must weigh – none of which is singularly dispositive:

> One fact which all the authorities consider significant in the inquiry, and particularly so in the case of the one-man or closely-held corporation, is whether the corporation was grossly undercapitalized for the purposes of the corporate undertaking. (citations omitted) …And, "(t)he obligation to provide adequate capital begins with incorporation and is a continuing obligation thereafter * * * during the corporation's operations." See Gillespie, supra ; Dix, Adequate Risk Capital, 52 Nw.U.L.Rev. 478, 494 (1958).
> Other factors that are emphasized in the application of the doctrine are failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers*687* or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders. The conclusion to disregard the corporate entity may not, however, rest on a single factor, whether undercapitalization, disregard of corporation's formalities, or what-not, but must involve a number of such factors; in addition, it must present an element of injustice or fundamental unfairness. But undercapitalization, coupled with disregard of corporate formalities, lack of participation on the part of the other stockholders, and the failure to pay dividends while paying substantial sums, whether by way of salary or otherwise, to the dominant stockholder, all fitting into a picture of basic unfairness, has been regarded fairly uniformly to constitute a basis for an imposition of individual liability under the doctrine.

*Id.* at 686,687.

Then, in *Keffer v. H.K. Porter Co, Inc.,* a federal question case arising under the Labor Management Relations Act of 1947 (and the first federal question case to consider the issue) the Fourth Circuit relied entirely on the factors it had previously set forth in *DeWitt. Keffer v. H.K.*

4

*Porter Co, Inc.*, 872 F.2d 60 (4th Cir. 1989).  Finally, in the most recent federal question case that it considered (arising under admiralty law), the Fourth Circuit affirmed the lower court's decision to rely on both *Keffer* and *DeWitt:*

> Application of the factors set forth in *Keffer v. H.K. Porter Co., Inc.*, 872 F.2d 60, 65 (4th Cir.1989), and ***DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.,*** 540 F.2d 681, 684-87 (4th Cir.1976), guide the determination of whether one entity constitutes the alter ego of another. These factors include gross undercapitalization, insolvency, siphoning of funds, failure to observe corporate formalities and maintain proper corporate records, non-functioning of officers, control by a dominant stockholder, and injustice or fundamental unfairness. ***Id. See*** also United States Fire Ins. Co. v. Allied Towing Corp., 966 F.2d 820, 828-29 (4th Cir.1992) (introducing overlap of directors as additional factor). Such a determination is to be made on a case-by-case basis. ***DeWitt,*** 540 F.2d at 684.

*Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line,* 160 F.3d 170 , 174 (4th Cir. 1998)

In the context of these cases, it is now clear that the *DeWitt* factors are themselves the common law of this Circuit that this Court should employ when it makes this determination later in this case.  Particularly in the context of a consumer protection statute whose provisions are to be construed liberally to achieve the remedial effect of the statute intended by Congress – one of the most basic canons of statutory construction -- this Court should reject the Defendant's invitation to read language into the statute that does not exist and require the Plaintiff to satisfy the severe Delaware factors, including the establishment of actual fraud as a requisite for piercing the corporate veil.

As the Defendant implicitly acknowledges on brief via its fierce opposition to this motion, it has a tough burden to maintain here.  The case law is uniform crystal clear -- the determination for this Court at this juncture is solely to determine whether Plaintiffs have sufficiently and clearly set forth allegations that place the Defendant on notice of their claims.

It is clear that this Defendant is aware that the Plaintiffs are asserting that the bank, Downey Savings and Loan, violated their rights under numerous consumer protection statutes, including the Fair Credit Reporting Act, the Real Estate Settlement Procedures Act, and the Truth in Lending Act.  It placed them into a exotic "pay option ARM" loan product without

5

disclosing the terms of this loan to them as required by law.  When the Plaintiffs asked Downey on repeated occasions to prove information regarding their loan, including the identity of the entity to which it had securitized the loan, it unabashedly refused to do so, in violation of RESPA.  Downey failed to provide the Plaintiffs with their credit score disclosures required by FCRA "as soon as reasonably practical" following its use of their scores, which might have allowed them to shop for a better, more traditional fixed loan product given that the Plaintiffs both have an impeccable credit rating with scores in the high 700s.  And as recently as this year, when Plaintiffs notified Downey that they intended to rescind their loan by virtue of the inadequate (and in one instance, non-existent) disclosures, Downey refused to void the security interest in their property.  It should come as no surprise to this Court that as of September 5th, 2008, both Downey entities have now been ordered by the Office of Thrift Supervision to cease and desist from engaging in numerous unsound lending practices, including the issuance of deceptive loan products such as these which, along with their aggressive securitization, are the underlying foundation for the national financial catastrophe that our country finds itself in today.

  The Defendant is also clearly aware that the Plaintiffs have alleged that the bank holding company, Downey Financial Corporation, exercises so much dominion over the activities of its <u>only</u> subsidiary, Downey Savings and Loan Association, through the overlap between the officers and directors of both entities and the siphoning of bank assets for the holding company's benefit that they will ask this Court to hold the bank holding company liable for the actions of its alter ego, the bank.

  At this juncture of the case, Plaintiffs are only privy to the information that the Securities and Exchange Commission requires the Defendant to file.  But after a diligent investigation, those documents demonstrate an alarming blurring of the corporate distinction between these two entities.  For example, a number of officers employed by the Bank, Downey Savings and Loan, hold the same title, duties and responsibilities for the bank holding company.   However, the

bank holding company does not pay them anything for these services – their only compensation is from the bank.  Thus, the bank holding company is constructively siphoning the assets of the bank for its own use.  Further – in the opposite direction – in the bank's employment agreement with its officers, the bank is required to "cause" its parent company, the bank holding company, to issue stock options and other incentive worth millions of dollars to these individuals.  It is an unusual world indeed when a corporation has such influence over its shareholders that it can "require" its shareholders to part with their assets to compensate the officers of the corporation.

      Based on these and other facts, the Plaintiffs are confident that they will develop the record further through discovery and eventually present a motion to the Court with a full and developed record to allow it to consider these issues more deliberatively.  However, given the liberal pleading standard found within Rule 8 and the requirement within Rule 15 that leave to amend should be liberally granted when the interests of justice require, this Court need not reach this determination now.   Plaintiffs move that this Court grant their motion to amend and order the Clerk to file their Second Amended Complaint.

      Respectfully submitted,
**JOYCE AND RICHARD YARISH**,


_____/s/_____
Matthew J. Erausquin, VSB#65434
Leonard A. Bennett, VSB#37523
*Counsel for the Plaintiff*
CONSUMER LITIGATION ASSOCIATES, P.C.
3615-H Chain Bridge Road
Fairfax, VA  22030
Tel:    703-273-7770
Fax:    888-892-3512
matt@clalegal.com

7

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 7th day of November, 2008 I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification to the following:

Jonathan Stuart Hubbard  
Troutman Sanders LLP  
Troutman Sanders Bldg  
1001 Haxall Point  
PO Box 1122  
Richmond, VA 23218-1122  
jon.hubbard@troutmansanders.com  

John Curtis Lynch  
Troutman Sanders LLP  
150 W Main St  
Suite 1600  
Norfolk, VA 23510  
john.lynch@troutmansanders.com  

                                        /s/  
                        Matthew J. Erausquin, VSB#65434  
                        Leonard A. Bennett, VSB#37523  
                        Counsel for the Plaintiff  
                        CONSUMER LITIGATION ASSOCIATES, P.C.  
                        3615-H Chain Bridge Road  
                        Fairfax, VA  22030  
                        Tel:    703-273-7770  
                        Fax:    888-892-3512  
                        matt@clalegal.com