IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JOYCE AND RICHARD YARISH, and others similarly situated | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| DOWNEY FINANCIAL CORPORATION, ET AL. | ) ) ) ) |
| Defendant. | ) ) |

Civil No. 3:08-cv-380

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT
DOWNEY SAVINGS AND LOAN ASSOCIATION'S
MOTION TO DISMISS COUNT ONE OF THE SECOND AMENDED COMPLAINT**

COME NOW the Plaintiffs Joyce and Richard Yarish, by counsel, and as for their Memorandum in Opposition to Defendant Downey Savings and Loan Association's ("Downey's") Motion to Dismiss Count One of the Second Amended Complaint, they state as follows:

Plaintiffs have brought this case based on the Defendant's failure to provide them with the disclosures mandated by 15 U.S.C. §1681g(g) in a timely fashion, or in Plaintiffs' case, at all.

This statute requires that an entity that uses one or more credit scores regarding a consumer in conjunction with a mortgage loan must provide a very specific disclosure to that consumer which contains several categories of information communicated to the mortgage lender by the credit reporting agencies from whom the credit scores were obtained, as specified in 15 U.S.C. §1681g(f).

1

These categories of information required to be disclosed to the consumer in the notice include:

(1)  the current credit score of the consumer or the most recent credit score of the consumer that was previously calculated by the credit reporting agency for a purpose related to the extension of credit;

(2)  the range of possible credit scores under the model used;

(3)  all of the key factors that adversely affected the credit score of the consumer in the model used;

(4)  the date on which each credit score was created; and

(5)  the name of the person or entity that provided the credit score or credit file upon which the credit score was created.

The statute then goes on in the next sub-paragraph to define various terms in the statute, including "credit score" and "key factors" very specifically.  For example, it is not sufficient for an entity to simply provide the top four factors which adversely affected the score, but it must list them in the order of their importance based on their effect on the credit score.  15 U.S.C. §1681g(f)(2)(B).  In addition to these five categories of information, the statute also requires the entity to provide the consumer with the specific text mandated by Congress, referred to in the statute as the "Notice to Home Loan Applicants".  15 U.S.C. §1681g(g)(1)(D).  The final statutory requirement is that the disclosure must be provided to the consumer by the entity "as soon as reasonably practicable" following its receipt of the information from the credit reporting agencies.

Despite that the Defendant fails to take a position on brief as to (1) what date it would have been reasonably practicable for it to have provided the Plaintiffs with these disclosures, or (2) on what date it contends that the Plaintiffs have alleged that they discovered the violation, it

nonetheless asks this Court to dismiss Plaintiffs' Complaint and find that the Plaintiffs failed to bring this case within two years of their discovery of the Defendant's violation of its statutory obligation. It is important to note that these dates are critical to the determination that it asks the Court to make. For example, it would be impossible for Plaintiffs to have discovered the violation prior to the date that it actually occurred.

In its effort to find a date to use as a substitute date, or hinge date, to start the clock running, and because it would not want to proffer the earliest date on which it was "reasonably practicable" for the Defendant to have complied, the Defendant instead reaches so far as grasp at Plaintiffs' proposed class definition and arbitrarily attempts to use the closing date of the loan as both the date on which the violation must have occurred, and also the date on which Plaintiffs must have discovered the violation. This logic is not supported by any evidence, and it flies entirely contrary to the clear meaning of the statute and its legislative history as discussed below.

Therefore, Plaintiff's arguments in opposition to the Defendant's motion are best summarized as follows:

1) The traditional "discovery rule" does not apply here, for the reasons discussed by the United States Supreme Court in the <u>Andrews</u> opinion, as well as the legislative history of the Fair Credit Reporting Act's statute of limitations provision, both before and after the 2003 FACTA amendments;

2) Even if the traditional discovery rule applied, its triggering mechanism would have been the date on which the Plaintiffs knew or reasonably should have known of their <u>injury</u>, and not the event which triggered the Defendant's duty, as the Defendant urges without support;

3

3) The specific violation alleged here is the failure to provide a notice "as soon as reasonably practicable" following the Defendant's use of a credit score from <u>each</u> of the three credit reporting agencies (Equifax, Experian and TransUnion) with regard to <u>each</u> Plaintiff in this case (for a total of 6 scores and 24 reason factors that should have been contained in the notice);

4) As a result of the FACTA amendments following the <u>Andrews</u> decision, the FCRA's statute of limitations is now, by default, 5 years from the date of the violation. The statute of limitations is shortened to 2 years only upon a showing that the Plaintiff *discovered the violation* and then waited more than 2 years thereafter to file her claims. It is not the reverse (for example, a default 2-year statute of limitations, lengthened to 5-years upon a showing of fraudulent concealment or misrepresentation by the tortfeasor). The establishment of a right to this affirmative defense and punitive measure is the Defendant's burden, not the Plaintiff's.

5) In this case, where the violation is the Defendant's failure to act and to provide a notice <u>that the Plaintiffs had no idea they were entitled to</u> until they were so alerted by counsel [1] Plaintiffs simply could not have "discovered the violation" or even known that they were injured by the Defendant's failure to provide the required notice, until they learned of the Defendant's duty to provide the notice in the first place.

## **LEGISLATIVE HISTORY OF 15 U.S.C. §1681p**

The Fair Credit Reporting Act was enacted in 1970 to promote efficiency in our country's banking system and to protect consumer privacy. When the jurisdictional provisions of the Act were being drafted in 1970, Congress was urged to adopt a 2-year statute of limitations that

---

[1] Plaintiffs are contrasting a violation that occurs via a failure to act with a violation that occurs via an affirmative act – e.g., a cursory or insufficient investigation that would be more likely to cause perceivable injury, as was more thoroughly discussed in this Court's memorandum opinion in *Broccuto*.

would begin to run upon the consumer's discovery of the violation. However, it declined to do so at that time. Thus, beginning with its initial enactment in 1970 and running through March 31, 2004, §1681p limited the jurisdiction of federal courts to hear claims as follows:

"An action to enforce any liability created under [the Act] may be brought … within two years from the date on which the liability arises, except that where a defendant has materially and willfully misrepresented any information required under [the Act] to be disclosed to an individual and the information so misrepresented is material to the establishment of the defendant's liability to that individual under [the Act], the action may be brought at any time within two years after discovery by the individual of the misrepresentation." (emphasis added)

Then, in 2003, Congress enacted the Fair and Accurate Credit Transactions Act (FACTA), which not only created the §1681g(g) statutory obligation at issue in this case[2], but also amended §1681p. Its amendment to this section was a response to the Supreme Court's decision in TRW Inc. v. Andrews, 534 U.S. 19, 122 S.Ct. 441 (2001) which refused to apply the general federal discovery rule ("the statute of limitations begins to run when a party knows or has reasonably should know that he has been injured as a result of the Defendant's unlawful conduct") to the FCRA because the statute already contained a more limited discovery exception which provided for tolling in circumstances in which knowledge of the violation was concealed by a misrepresentation.

Now, following the FACTA amendments and relevant to the facts of this case, §1681p reads as follows:

"An action to enforce any liability created under this subchapter may be brought … no later than the earlier of:
(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or
(2) 5 years after the date on which the violation that is the basis for such liability occurs.

(emphasis added)

---

[2] The effective date of the statutory obligation imposed by §1681g(g) is December 1, 2004. The effective date of the revisions to §1681p is March 31, 2004. Thus, the change to the statute of limitations provision occurred prior to the effective date of the statutory section that forms the basis for this action.

5

Thus, with the FACTA amendments, Congress effectively expanded the statute of limitations to 5 years from the date on which the violation occurred, but imposed a punitive provision to prevent a Plaintiff from learning of the violation and then delaying the prosecution of her case. The core issue, then, for the Court to decide is what it means for a Plaintiff to "discover the violation" in the specific context of a statutory obligation to provide a notice, triggered by events which are only knowable internally to the Defendant (the dates on which it "used" a series of credit scores, and received various categories of information from multiple credit reporting agencies, including prioritized reason codes and score ranges) and, further, within a "reasonably practicable" time period that is also only knowable internally to the Defendant.

## I. THE DEFENDANT FAILS TO ESTABLISH THE DATE ON WHICH THE PLAINTIFFS DISCOVERED THE VIOLATION FOR PURPOSES OF THE MORE RESTRICTIVE TWO-YEAR STATUTE OF LIMITATIONS PERIOD

This consideration is unique in two ways. First, the violation alleged here is the result of an omission, not an act. This is important because acts and their consequences can be observed, while omissions, or failures to act, are not so easily detectable. Indeed, they are impossible to detect when the person to whom the duty is owed does not know of the actor's obligation to act in the first place. In this case, Plaintiffs were entitled to a notice containing each of the statutorily required items of information mandated by the FCRA – including 6 scores and 24 reason factors -- and they were entitled to the notice as soon as Downey could reasonably provide it to them.

Plaintiffs' right to this notice existed whether they knew of their right to it or not. Despite that, as the movant, Downey has the burden of proof on its motion and its affirmative statute of limitations defense, Downey has not volunteered the date on which it would concede

that it would have been reasonably practicable for it to provide the notice to the Plaintiffs. It could be that, Downey will later claim that it was never reasonably practicable for them to provide the §1681g(g) disclosures. However, that issue is not yet before the Court, and Downey cannot have it both ways. Further, at this early juncture, even if Downey could establish the earliest date that it contends <u>was</u> reasonably practicable to provide Plaintiffs with their disclosure, it would then have to take the second step of showing that Plaintiffs were aware of Downey's duty and that the disclosure was due to them on a date certain.

The second element of this consideration, is Congress's decision to depart from the traditional federal rule which starts the limitations period from the date that the Plaintiff becomes aware of facts which would cause a reasonable person to know that she has been injured. The explicit language of the post-FACTA version of §1681p, which was at all times applicable to this case, requires that the shorter 2-year statute of limitation period is only applicable upon a showing that the Plaintiff "discovered the violation" and then delayed the prosecution of her claim.

It is somewhat remarkable that the post-FACTA language has not been analyzed by any Court to date in the context of an affirmative duty to provide a notice, despite the numerous notice requirements found throughout the FCRA. In the few instances in which a court has considered the post-FACTA statute of limitations provision, it has always been in the context of a procedural claim, for example, when a consumer should have known that a reasonable investigation wasn't performed by a credit reporting agency or furnisher. However, the most thorough and recent analysis was issued by this Court in <u>Broccuto v. Experian Information Solutions</u>, 2008 WL 1969222, E.D. Va., 2008 (J. Hudson).

While <u>Broccuto</u> involved a furnisher's procedural violation of §1681s-2(b), the Court's

analysis is nonetheless helpful in this notice case. (This is especially so, given that a furnisher's inadequate or cursory investigation of a consumer dispute are more readily knowable to the consumer given that the law requires the credit reporting agencies to notify the consumer of the results of the investigation).

The Defendant in <u>Broccuto</u> argued that because Plaintiff had submitted numerous disputes to the credit reporting agencies prior to the 2-year period preceding the filing date of the Complaint and had learned that the furnisher had "verified" the information, she was precluded from bringing an action based on its failure to conduct a reasonable investigation of disputes which did fall within the 2-year window. The Court held that each separate act by the furnisher could provide an independent basis for liability under the statute, and further, that "[g]iven FCRA's clear wording, a plaintiff must file suit within two years from the date that <u>he learns that</u> [a defendant] <u>did not act as required by the statute</u> in response to his dispute". <u>Id.</u> at 3. (emphasis added).

This Court further held that:

"the statute of limitations is based on a consumer discovering that a bank or credit reporting agency did not take certain steps in response to their dispute. That means the clock does not begin running until a consumer learns information which appears to be normally within the province of the bank or credit reporting agency and not easily discovered by the consumer. Though not necessary for resolving this motion, it would be difficult to determine exactly when a consumer discovered a FCRA violation at such an early stage of the litigation". <u>Id.</u>

It is difficult to craft a hypothetical fact pattern that contains more variables internally knowable only to the bank than the facts of this case. For example, only Downey knows the date on which it "used" the 6 credit scores it obtained regarding the Plaintiffs (as contrasted with the date that it "obtained" the scores). To this day, only Downey is in sole possession of the 6 credit scores and 24 "reason factors" which were communicated to it by the 3 credit reporting

agencies that regarded each of the Plaintiffs. Only Downey knows the "range of possible scores" that the bureaus communicated to it, and only Downey knows what period of time would have been internally reasonably practicable for it to provide the Plaintiffs with the statutorily required notice. If the Plaintiffs are not in possession of these facts today, they certainly did not have them more than two years ago.

  **II. EVEN IF THE COURT WERE TO IGNORE THE CLEAR STATUTORY TEXT AND TO ADOPT THE TRADITIONAL DISCOVERY RULE URGED BY THE DEFENDANT, THE RESULT WOULD BE THAT THE STATUTE OF LIMITATIONS HAS NOT EXPIRED.**

  The Court may note that, despite the presence of explicit statutory text in the FCRA which explicitly carves out and sets forth the statute of limitations, the Defendant apparently argues nonetheless for the application of the traditional discovery rule. It does so because it has a tough argument to make. It needs a hinge date upon which to sell its argument, and it needs to start the clock running for its statute of limitations purposes without proffering a date to the Court or making a concession as to what date would have been reasonably practicable. Then, it must convince this Court to use a date it pulls out of the air (the date it argues, incorrectly, that the duty to provide the notice would have arisen) instead of the date required by the traditional discovery rule (the date that the Plaintiffs knew or reasonably should have known they were injured). Clearly, Downey's arbitrary selection of a hinge date on which it <u>obtained</u> Plaintiffs' credit scores has nothing to do with the date on which the Plaintiffs discovered or reasonably should have discovered their injury, as contemplated by the traditional discovery rule. Instead it has, at best, only a tangential relationship to the date on which the duty arose, and the Court

9

should reject the Defendant's efforts at conflating the two.3

However, even if the Court were to accept the Defendant's invitation to employ the traditional discovery rule, it would find that this is a dead end for the Defendant as well. In an analogous "notice case" involving the traditional discovery rule, the Fourth Circuit considered a similar statute of limitations argument using the traditional discovery rule and reached the conclusion that Plaintiff argues for here.

In <u>Jaynes ex. rel. Jaynes v. Newport News School Board</u>, 13 Fed.Appx. 166, (4th Cir. 2001) (non-published) the Fourth Circuit considered the question within the context of the Individuals with Disabilities Education Act (IDEA). The statute provides that a school board must provide notice to the parents of a qualifying child of their right to a hearing, as well as the procedures for requesting a hearing, following the board's unilateral modification of their child's Individual Education Plan (IEP).

The school board argued that the parents' claim fell outside the statute of limitations because the parents attended a meeting in October of 1994 which in the IEP was modified to reduce the services provided, and additionally because they later removed their child from the program in January of 1995. Thus, despite that notice was not actually provided to the parents until 1996, the board argued that the parents had knowledge of the facts that formed the bases of their claims. The Fourth Circuit disagreed with the school board, holding that:

---

3 In fact, even if they were admissible, the documents filed by Downey as Exhibits to its Motion demonstrate only that Plaintiffs were aware during the application process that the mortgage broker, Western, would obtain their credit <u>reports</u> (not scores) in the future (Exhibit A), and then at closing, that the Plaintiffs signed a document stating that they acknowledged that Downey had obtained their credit reports on some prior occasion. (Exhibit B). Neither of these documents references the use of credit <u>scores</u>, or acknowledges the Plaintiffs' knowledge of the transmission of prioritized reason factors or "score ranges" from the bureaus to the lender.

"In general, knowledge that an injury is actionable is irrelevant to the determination of when the injury arose. Here, however, Newport's failure to notify the Parents of their parental rights, in violation of statutory mandates, **is** the alleged injury. The Parents complain that because Newport neglected to inform them of their right to a due process hearing, they were deprived of the opportunity to seek recourse through such a hearing. It follows that the moment they learned they had a right to a hearing was the moment they learned Newport had a duty to inform them of a such a right."

Id. at 171 (emphasis in original).

In this case, Plaintiffs had a right to know of the credit scores obtained by Downey, the reason factors (in order of priority) which negatively affected their scores, the names and addresses of each credit reporting agency that provided the scores, and the additional "Notice to Home Loan Applicants" that Congress deemed so important as to explicitly dictate and mandate within the statute. Plaintiffs had a right to all of this information, which existed exclusively within the records of Downey, as soon as reasonably practicable after Downey used their credit scores. Just as in Jaynes, it is the failure to provide an accurate and complete notice itself within a specific timeframe that represents the core of the violation.

Instead, Downey fallaciously attempts to conflate the date that Plaintiffs discovered the violation with the entirely irrelevant date of the occurrence of the violation, applicable only to the 5-year statute of limitations. If Congress intended for the abbreviated 2-year period to begin to run upon the date that the violation was committed, it certainly knew how to draft language to that effect. Indeed, this was the actual state of the law prior to FACTA. But even then, Downey's current motion has failed to even demonstrate or proffer in hindsight what the "reasonably practicable" date of notice should have been. It certainly cannot show that Plaintiffs knew of it, or even show that Plaintiffs knew that Downey had used their credit scores from the three credit reporting agencies, or that it had received the scores and associated reason factors,

ranked by priority of scoring effect, from the credit reporting agencies.[4]

If the Court desires a declaration from the Plaintiffs to show that they did not know of Downey's obligation to provide them with this notice until just before the Complaint was filed in this case, or if the Court would prefer to address the Defendant's motion as one for summary judgment and formally take evidence, the Plaintiffs will gladly provide the same. But as per the clear text of 15 U.S.C. 1681p and its legislative history, and construing the allegations in the Complaint in a light most favorable to the Plaintiffs, Downey has failed to demonstrate that Plaintiffs have alleged that they discovered the violation more than two years before the filing date of this Complaint, and therefore, its motion to dismiss must fail.

Respectfully submitted,
**JOYCE AND RICHARD YARISH,** *for themselves and on behalf of all similarly situated individuals,*

By: _____/s/_____
Matthew J. Erausquin, VSB#65434
Leonard A. Bennett, VSB #37523
Counsel for the Plaintiffs
Consumer Litigation Associates, P.C.
3615-H Chain Bridge Road
Fairfax, VA 22030
Tel: 703-273-7770
Fax: 888-892-3512
matt@clalegal.com

---

[4] If the Court were to carry the Defendant's arbitrary proposition to its logical extreme -- that the statute of limitations begins when the event triggering the Defendant's duty arises -- the "triggering event" would not just comprise a Defendant's use of one or more credit scores, but also the receipt from one or more credit reporting agencies of the other categories of information described in 15 U.S.C. §1681g(f), including the prioritized reason factors which are also provided to entities such as Downey from the credit reporting agencies at the time that the scores are created and transmitted, as well as the range of possible credit scores from each bureau. The Defendant would be hard pressed to come forth with evidence demonstrating that the Plaintiffs were ever aware that the credit reporting agencies transmitted any of these other categories of information to the Defendant. To this day, they have no idea what their prioritized reason factors were. But, of more relevance to the Court's consideration of this Motion, the Plaintiffs certainly have not alleged the same in their Complaint.

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 18th day of March, 2009 I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification to the following:

Jonathan Stuart Hubbard
Troutman Sanders LLP
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
Richmond, VA 23218-1122
jon.hubbard@troutmansanders.com

John Curtis Lynch
Troutman Sanders LLP
150 W Main St
Suite 1600
Norfolk, VA 23510
john.lynch@troutmansanders.com

                                                          /s/
                                      Matthew J. Erausquin, VSB#65434
                                      Leonard A. Bennett, VSB #37523
                                      Counsel for the Plaintiffs
                                      Consumer Litigation Associates, P.C.
                                      3615-H Chain Bridge Road
                                      Fairfax, VA  22030
                                      Tel:    703-273-7770
                                      Fax:    888-892-3512
                                      matt@clalegal.com